UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case NO.:

**GINA BARROSO**,

    Plaintiff,

-VS-

**MICHAEL PACK, AS CEO AND DIRECTOR,
U.S. AGENCY FOR GLOBAL MEDIA,**

    Defendant.

_____

**COMPLAINT**
(JURY TRIAL DEMANDED)

Plaintiff, GINA BARROSO, sues the Defendant, MICHAEL PACK, as CEO and Director, U.S. AGENCY FOR GLOBAL MEDI, and as grounds alleges:

PARTIES

1. Plaintiff, GINA BARROSO, is a female citizen of the United States and a resident of Miami-Dade County, Florida. Plaintiff is a qualified person with a disability.

2. The U.S. AGENCY FOR GLOBAL MEDIA ("USAGM") was previously known as the Broadcast Board of Governors and Grant K. Turner served as CEO and Director.

3. Defendant, MICHAEL PACK, is sued in his official capacity as CEO and Director of the U.S. Agency for Global Media.

4. Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1991 and under the Americans with Disabilities Act.

## JURISDICTION AND VENUE

5. This is an action arising under the Title VII of the 1991 Civil Rights Act and under the Americans with Disabilities Act. The Court has jurisdiction pursuant to 28 U.S.C. 1331 and §1337 as this action arises under federal law and the United States is a Defendant through Michael Pack in his official capacity.

6. USAGM conducts operations in the Southern of District of Florida and venue is proper in this district.

## CONDITIONS PRECEDENT

7. Plaintiff filed a formal complaint of discrimination on February 15, 2016 and the complaint was accepted for investigation on June 14, 2016.

8. The complaint was investigated between June 30, 2016 and November 15, 2016 and the Report of Investigation was forwarded to Plaintiff on December 9, 2016.

9. On January 10, 2017, she elected a hearing with the EEOC and the entire complaint file was forwarded to the EEOC on February 9, 2017.

10. A final hearing was held before an administrative law judge in August, 2019.

11. A final order was issued on May 8, 2020 and the Plaintiff was authorized to file suit in this court against this Defendant within 90 days of the date of the final order.

12. This complaint was timely filed.

## GENERAL ALLEGATIONS

13. Plaintiff was employed as a Multimedia Specialist, GS-10710-13, for the Office of Cuba Broadcasting (OCB) based in Miami, Florida.

14. She was assigned to the television department TV Marti where she worked as a news anchor, reporter, producer and writer. She was the only multimedia specialist that produced, wrote, reported, and presented entire specials at the Agency.

15. In or around January, 2014, Plaintiff filed a formal complaint of disability discrimination with the Agency.

16. In 2013, six (6) job opportunities had opened up and she applied for the position of Supervisory Imaging Producer, with a job description and required physical activity similar to her then current responsibilities.

17. Shortly after applying, she was visited by her fourth line supervisor, Mr. Carlos Garcia-Perez, who told her to apply for the Multimedia Specialist, GS-10710-13 opening which required physical activity that she was unable to perform due to her disability.

18. Plaintiff explained to Garcia-Perez that she would be unable to take on this position, to which he stated that she could either take the Multimedia Specialist, GS-10710-13 or no job.

19. Plaintiff contacted head of HR, Susan King, and explained to her that some of the duties on the position description were beyond her physical abilities due to an injury. Ms. King advised her to apply for the position but to be honest and disclose her handicap wherever possible, and that if she were chosen for the position, they would deal with an accommodation at that time.

20. While on the job, Plaintiff often wore a neck brace and had gadgets on her chair to alleviate back pain.

21. Everyone in the building was aware of her situation which she would bring up during every interview.

22. During her interview for the Multimedia Specialist, GS-10710-13 position, she informed the General Manager at the time, John Lippman, of her disability and he responded that he understood what that is like as his wife has severe arthritis. Mr. Lippman left shortly after Plaintiff was hired into the Multimedia Specialist, GS-10710-13 position.

23. Subsequently, she received an e-mail qualifying her at 100% for the position of Supervisory Imaging Producer followed by an offer letter.

24. However, the offer was a mistake and was withdrawn.

25. Instead, Plaintiff was offered the position of Multimedia Specialist, GS-10710-13. Plaintiff accepted this position and was immediately instructed to execute physical duties that her handicap would not allow her to perform.

26. The accommodation offered was a demotion from her then current GS-13 position to TV Production Specialist GS-1071-12.

27. In the end, Plaintiff was left as a GS-13 in part because the USAGM started noticing that almost every single position description for GS-12 and GS-13 included the verbiage "shooting video" and "editing" and that not a single reporter, levels 12 or 13, edits or shoots their own videos.

28. As soon as the accommodation was resolved and the video shooting and editing responsibilities were removed without a demotion, Plaintiff was required to travel.

29. As a single mother of an adopted daughter with no family in the immediate area, she was required to travel more than anyone else in the building.

30. Plaintiff's supervisors were well informed of her situation. Knowing her situation, the Defendant sought to offer assignments well beyond plaintiffs physical and familial abilities.

31. On one occasion, she was asked to travel alone to Ecuador for a twenty-one (21) day trip to meet a freelance cameraman and for the purpose of accompanying a group of Cubans, along with their coyote human trafficker, from Ecuador through South America to Central America and eventually to the Mexican border where she would cross the border with these undocumented Cubans and the human trafficker.

32. On or around April 7, 2014, after a fire had left the buildings first floor newsroom uninhabitable, the offices were redone and a new layout was designed. This new diagram had Plaintiff removed from all of the colleagues that she shared space with and placed her in the basement with two (2) non-news TV producers and radio producers. Before implementing the new design, the union steward was able to intervene and have me reincorporated with my group.

33. After Mr. Lippman left as General Manager, Al Pando took over this position and upon his arrival, was made aware of Plaintiff's situations.

34. On one occasion, Plaintiff met with Mr. Pando outside of work as she had worked with his now ex-wife some 20 years earlier at Telemundo and had built a friendly relationship.

35. Pando would tell the Plaintiff that he couldn't speak freely at OCB and would invite her to meet him for coffee outside the building.

36. On one occasion when Plaintiff met with Pando, he told her "how fine [she] was after all these years, how [she] don't look [her] age, and made comments regarding her clothing.

37. Pando told her that he had a great body and that he worked out all the time. He started to tell her stories about how young women would approach him at the building in which he lived and would tell him how hot he is.

38. During an editorial meeting one day, Mr. Pando referred to an associated press reporter in English as a "whore dog". On another occasion, he referred to a colleague in DC as a "f***g a**hole".

39. Pando often used profanity, offensive jokes and slurs in his communications and when describing others.

40. Plaintiff received a letter of admonishment relating to an incident with a security guard; a security guard who had been sexually harassing her. The security guard, while screening Plaintiff at the door upon entrance to the facility, would make unwelcoming comments such as, "So does your ex-husband help you with your daughter?", "Does he give you money and come around?", and "I like your skirt today".

41. Each time Plaintiff had to enter the building she was subjected to unwarranted comments and questions from Mr. Rene Aguilera, while at the same time he is rummaging through her purse looking through her most intimate belongings.

42. When the x–ray machines were down he would have to use the hand held metal detector and would make comments with sexual innuendos about having to "use his stick". A few days after making a complaint to Ms. Gulliama, Mr. Aguilera wrote Plaintiff up for pushing an exit button.

43. On the same day, a colleague also exited the building by pressing the buzzer to go outside to smoke a cigarette. However, this colleague was issued a warning via e-mail correspondence and not a letter of admonishment.

44. On February 16, 2016, Plaintiff filed a formal complaint of gender discrimination with the Agency.

45. Upon arriving to work on October 19, 2015, Plaintiff's employment was terminated by Al Pando citing unsatisfactory performance due to an asserted unprofessional demeanor stemming from a complaint filed, but at the time of termination was still under investigation, by Fabian Crespo. This complaint was later withdrawn by Mr. Crespo.

46. Mr. Crespo filed his complaint on or around June 16, 2015 following Plaintiff's submission of a complaint against him regarding his disregard for deadlines and other responsibilities when it came to her work as producer.

47. Plaintiff brought her complaint to Mr. Pando's attention and was told to discuss with Ms. Martinez. However, when Mr. Crespo took his complaint to Mr. Pando he was immediately instructed to file an EEO complaint and so he did so.

48. Plaintiff was never afforded an opportunity to correct any misconduct by the Agency.

# COUNT I

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

49. Plaintiff readopts and re-alleges paragraphs 1 through 47 above as if fully set forth herein.

50. The Defendant violated the ADA by repeatedly assigning her work in violation of the work restrictions imposed upon her because of her disabilities in an effort to force her to resign.

51. As a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, by and through the actions and inactions of its managerial personnel, Plaintiff has suffered injuries and losses including a violation of her statutory rights, pain and suffering and extreme emotional stress; loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, Plaintiff prays for the following relief:

a. Entry of a judgment for restitutionary, compensatory, and liquidated damages including, but not limited to, damages for emotional pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life;

b. Order the reinstatement of Plaintiff with full back pay and benefits or in lieu of resolution award front pay;

c. Award Plaintiff her costs in this action, including reasonable attorneys' fees and expert fees as provided by the ADA; and

d. Any other equitable relief deemed appropriate by this Court.

## COUNT II

### VIOLATION OF TITLE VII-GENDER DISCRIMINATION

52. Plaintiff readopts and re-alleges paragraphs 1 through 47 above as if fully set forth herein.

53. BARROSO was subjected to discrimination because of her gender in that she was subjected to a work environment ridiculed with sexual innuendo and suggestion at the hands of the head of the Office of Cuba Broadcasting and this conduct created a workplace was objectively and subjectively hostile to her because of her gender.

54. The Defendant further sought to force her to resign by assigning work which conflicted with her parental responsibilities knowing that as a mother of child she had no resources to assist her when traveling.

55. The Defendant ignored her complaints about sexual harassment in the workplace and further treated her differently from men in terms of discipline.

56. As a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, by- and through the actions and inactions of its managerial personnel, Plaintiff has suffered injuries and losses including a violation of her statutory rights, pain and suffering and extreme emotional stress; loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, Plaintiff prays for the following relief:

    a. Entry of a judgment for restitutionary, compensatory, and liquidated damages including, but not limited to, damages for emotional pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life;

    b. Order the reinstatement of Plaintiff with full back pay and benefits or in lieu of resolution award front pay;

    c. Award Plaintiff here costs in this action, including reasonable attorneys' fees and expert fees as provided by the ADA; and

    d. Any other equitable relief deemed appropriate by this Court.

## COUNT III
### RETALIATION

57. Plaintiff readopts and re-alleges paragraphs 1 through 47 above as if fully set forth herein.

58. The Defendant retaliated against Plaintiff because she made repeated complaints of discrimination against the Defendant regarding sex and disability discrimination.

59. This retaliation consisted of unjust discipline a write-ups and ultimately in termination.

60. As a direct, natural, foreseeable and proximate result of the retaliatory actions and inactions of Defendant, by- and through the actions and inactions of its managerial personnel, Plaintiff has suffered injuries and losses including a violation of her statutory rights, pain and suffering and extreme emotional stress; loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, Plaintiff prays for the following relief:

a. Entry of a judgment for restitutionary, compensatory, and liquidated damages including, but not limited to, damages for emotional pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life;

b. Order the reinstatement of Plaintiff with full back pay and benefits or in lieu of resolution award front pay;

c. Award Plaintiff here costs in this action, including reasonable attorneys' fees and expert fees as provided by the ADA; and

d. Any other equitable relief deemed appropriate by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
Fla. Bar No.: 0203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive
Weston, Fla. 33331
Tel: (954) 641-3441